| | |
|---|---|
| 1 | KARIN G. PAGNANELLI (SBN 174763) |
| | kgp@msk.com |
| 2 | MITCHELL SILBERBERG & KNUPP LLP |
| | 11377 West Olympic Boulevard |
| 3 | Los Angeles, California 90064-1683 |
| | Telephone:  (310) 312-2000 |
| 4 | Facsimile:   (310) 312-3100 |
| 5 | ANTONY J. McSHANE (*pro hac vice* pending) |
| | KATHERINE DENNIS NYE (*pro hac vice* |
| 6 | pending) |
| | NEAL, GERBER & EISENBERG LLP |
| 7 | 2 N. LaSalle Street, Suite 1700 |
| | Chicago, Illinois 60602-3801 |
| 8 | Telephone:  (312) 269-8000 |
| | Facsimile:   (312) 269-1747 |
| 9 | |
| 10 | Attorneys for Defendants DRL ENTERPRISES, INC. and REPUBLIC TOBACCO, L.P. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREEN PLANET, INC., a California corporation, | CASE NO.   CV12-1383 MMM (SPx) |
| Plaintiff, | Honorable Margaret M. Morrow |
| v. | **NOTICE OF MOTION AND MOTION OF DEFENDANTS DRL ENTERPRISES, INC. AND REPUBLIC TOBACCO, L.P. TO DISMISS** |
| DRL ENTERPRISES, INC., a Delaware corporation; REPUBLIC TOBACCO, L.P., a Delaware limited partnership; and DOES 1 through 9, inclusive, | |
| Defendants. | DATE:       April 30, 2012 |
| | TIME:        10:00 a.m. |
| | CTRM.:      780 |

4521613.1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

PLEASE TAKE NOTICE that, on April 30, 2012, in the courtroom of The Honorable Margaret M. Morrow of the United States District Court for the Central District of California, 255 E. Temple Street, Courtroom 780, Los Angeles, CA 90012 at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendants DRL Enterprises, Inc. and Republic Tobacco, L.P. shall, and hereby do, move the Court pursuant to Federal Rules of Civil Procedure 12(b)(7) and 12(b)(6) to dismiss this action.

This Motion is made on the following grounds:

1. This is an anticipatory suit filed by Plaintiff for the disfavored purpose of forum-shopping and wrestling from the natural Plaintiffs the decision of whether and where to bring a suit for trademark infringement. This Court should therefore exercise its discretion to dismiss this case in favor of the parallel case now pending in the Northern District of Illinois.

2. In the alternative, this action should be transferred to the Northern District of Illinois, where the natural Plaintiffs and the infringed trademarks reside, where the damages have occurred.

This Motion is and will be based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Seth I. Gold and Antony J. McShane, any additional memoranda in support thereof, and any argument presented at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 14, 2012.

//

4521613.1

| | | |
|---|---|---|
| 1 | DATED: March 20, 2012 | KARIN G. PAGNANELLI<br>MITCHELL SILBERBERG & KNUPP LLP |
| 2 | | |
| 3 | | ANTONY J. McSHANE<br>KATHERINE DENNIS NYE<br>NEAL, GERBER & EISENBERG LLP |
| 4 | | |
| 5 | | |
| 6 | | By:  /s/ Karin G. Pagnanelli<br>    Karin G. Pagnanelli<br>    Attorneys for Defendants<br>    DRL ENTERPRISES, INC. and<br>    REPUBLIC TOBACCO. L.P. |

Mitchell
Silberberg &
Knupp LLP

4521613.1

3

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS ......................................................................... 2

    A. Republic's Rights in the Point Marks ....................................... 2

    B. Green Planet's Infringement of the Point Marks ..................... 3

    C. The Parties' Pre-Litigation Communications and the California and Illinois Actions .............................................. 5

III. THE COURT SHOULD DISMISS OR STAY THIS ACTION ................... 6

    A. The Court Should Dismiss or Stay this Action in Deference to the Illinois Action ............................................. 6

    B. In the Alternative, this Action Should be Transferred to the Northern District of Illinois ............................................ 8

IV. CONCLUSION ....................................................................................... 10

4521613.1

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*BASF Corp. v. Symington*,
    50 F.3d 555 (8th Cir. 1995) .......................................................................... 9, 10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................ 10

*Church of Scientology v. U.S. Dep't of the Army*,
    611 F.2d 738 (9th Cir. 1979) ................................................................................ 6

*Columbia Pictures Television v. Krypton Broad. of Birmingham*,
    106 F.3d 284 (9th Cir. 1997) ................................................................................ 8

*Endless Pools, Inc. v. Wave Tec Pools, Inc.*,
    362 F. Supp. 2d 578 (E.D. Pa. 2005) ................................................................... 9

*Ex-Im Plastics, Inc. v. Miwon Am., Inc.*,
    No. CV 96-5710 JGD RCX, 1996 WL 928189 (C.D. Cal. Oct. 28, 1996) ......... 9

*Gov't Emps. Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) .............................................................................. 6

*Gribin v. Hammer Galleries*,
    793 F. Supp. 233 (C.D. Cal. 1992) .................................................................. 6, 8

*Inherent.com v. Martindale-Hubbell*,
    420 F. Supp. 2d 1093 (N.D. Cal. 2006) ........................................................ 6, 7, 8

*K-Swiss Inc. v. Puma AG*,
    No. CV 06-2004-GAF, 2009 WL 2049702, at *3
    (C.D. Cal. July 20, 2006) .................................................................................. 7, 8

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ................................................................................ 6

*Mission Ins. Co. v. Puritan Fashions Corp.*,
    706 F.2d 599 (5th Cir. 1983) .............................................................................. 10

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .............................................................................................. 9

4521613.1

# TABLE OF AUTHORITIES cont'd

**Page(s)**

*Reaves v. Cable One, Inc.*,
   No. 11–00469, 2011 WL 5331695 (D. Ariz. Nov. 7, 2011) ............................ 9

*Stewart Org. Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ......................................................................................... 9

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ....................................................................................... 6

*Xoxide, Inc. v. Ford Motor Co.*,
   448 F. Supp. 2d 1188 (C.D. Cal. 2006) ...................................................... 6, 7

## STATUTES

15 U.S.C. §1065 ....................................................................................................... 3

21 U.S.C. §387 .................................................................................................... 1, 4

21 U.S.C. § 863(d) ............................................................................................. 1, 3

28 U.S.C. §1404(a) ......................................................................................... 2, 8, 9

28 U.S.C. § 2201 ..................................................................................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

DRL Enterprises, Inc. and Republic Tobacco, L.P. (collectively "Republic"), are nationally known purveyors of roll-you-own or make-you-own cigarette products, including smoking tobacco, cigarette papers, cigarette tubes and cigarette rolling, injecting and making machines. Republic has sold a distinct blend of cigarette papers under and the trademarks 1.5, 1.25 and 1.0 (the "Point Marks") since 1976, 1977 and 1985, respectively. These brands have enjoyed enormous commercial success for decades, and the federal trademark registrations protecting them are now incontestable. *See* Registration Nos. 1,331,207, 1,328,866, and 1,481,006.

Recently, Plaintiff Green Planet, Inc. ("Green Planet") commenced use of the 1.0 and 1.5 Marks with inferior quality cigarette papers that also bear a "hippie" cartoon character design and the words TOKE TOKEN, which refers to the ingestion of marijuana. Accordingly, Green Planet's products infringe Republic's valuable trademarks and violate the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. §387, and the Controlled Substances Act, 21 U.S.C. § 863(d). Thus, not only will Green Planet's products be confused with cigarette papers sold by or associated with Republic, but they will also irreparably taint Republic and its cigarette papers with Green Planet's illicit purpose and inferior quality, causing Republic irreparable harm. Republic therefore objected and demanded that Green Planet remove its 1.0 TOKE TOKEN and 1.5 TOKE TOKEN products from the market.

While the parties were engaged in settlement discussions, Green Planet raced to the courthouse and filed, but did not attempt to serve, this Declaratory Judgment action for the sole purposes of defensive, preemptive forum-shopping and wresting from Republic the decision of whether and where to bring a suit for

1

4521613.1

trademark infringement. After this action was filed, and it was clear that settlement discussions had ceased, Republic filed suit in the Northern District Court of Illinois alleging trademark infringement and seeking cancellation of the TOKE TOKEN trademark registration. Green Planet did not attempt to serve Republic until it became clear that Republic would assert its rights.

Preemptive lawsuits and forum-shopping are disfavored. Courts therefore have the discretion to depart from the first to file rule and dismiss earlier filed preemptive action. Republic respectfully requests that this Court dismiss this action in favor of the parallel proceeding in the Northern District of Illinois. In the alternative, Defendants request that this action be transferred in the interests of justice, under 28 U.S.C. §1404(a), to the Northern District of Illinois so that all the claims may be heard together where the proper plaintiffs and the Point Marks reside and where the damages occurred.

## II.  STATEMENT OF FACTS

### A.  Republic's Rights in the Point Marks

For many years, DRL Enterprises, Inc. has been engaged in the distribution and sale of a unique and distinctive style and blend of cigarette papers under and in connection with the Point Marks, through its distributor, Republic Tobacco L.P. (Declaration of Seth I. Gold "Gold Dec." at ¶ 4.) Republic Tobacco L.P. distributes these cigarette papers to distributors, wholesalers, retailers, and resellers across the United States through tobacco shops, drugstores, tobacco outlets, convenience and other retail stores. (*Id.* at ¶ 3.) Republic's goods are well known in the industry for being of the highest quality. (*Id.*)

Republic began marketing this distinctive blend of cigarette papers under and in connection with the 1.5 Mark in 1976. (*Id.* at ¶ 4.) Republic began marketing these cigarette papers under the 1.25 Mark in 1977. (*Id.*) Republic began marketing these cigarette papers under the 1.0 Mark in 1985. (*Id.*) Since their introduction to the market, Republic has spent many millions of dollars

promoting cigarette papers under the Point Marks.  For example, in each of the last ten (10) years, Republic has spent more than $1 million dollars annually to promote its cigarette papers bearing the Point Marks.  As a result of Republic's continuous marketing, promotion and distribution of the cigarette papers, Republic has sold more than $20 million annually of its cigarette papers bearing the Point Marks.  (*Id.* at ¶ 5.)  Moreover, as required by law, Republic has regularly enforced its rights in the Point Marks, and while others in the cigarette paper industry may use the fractional designations 1 ¼ or 1 ½, no other manufacturers of cigarette papers use the designations 1.0, 1.25, or 1.5.  (*Id.* at ¶ 7.)

As a result of consistent and exclusive efforts to promote and protect these marks, Republic has developed considerable consumer recognition and goodwill in the Point Marks, which are now among its most valuable assets.  (*Id.* at ¶ 6.)  To protect its rights, DRL Enterprises has obtained federal trademark registrations for its 1.0, 1.25 and 1.5 Marks for use with cigarette papers, namely Registration Nos. 1,481,006, 1,328,866, and 1,331,207, which are now incontestable pursuant to 15 U.S.C. §1065.

### B.    Green Planet's Infringement of the Point Marks

Recently, decades after Republic began using and extensively promoting its Point Marks with cigarette papers, Green Planet commenced the promotion, distribution and sale of cigarette papers bearing the 1.0 and 1.5 Marks.  Green Planet's cigarette papers are inferior in quality to Republic's cigarette papers.  (Gold Dec. at ¶ 9.)

Moreover, Green Planet's 1.5 branded papers bear the additional trademark TOKE TOKEN. (Declaration of Antony J. McShane, "McShane Dec." at Exhibit C.)   The term "toke" is a well-known term for smoking a marijuana cigarette.  (*Id.* at Ex. D.)  Thus, the Green Planet's TOKE TOKEN reference shows that its product is intended to be used for smoking marijuana.  As such, Green Planet's product constitutes drug paraphernalia and violates the Controlled Substances Act,

3

21 U.S.C. § 863(d), and similar state anti-drug paraphernalia statues.  Additionally, Green Planet's TOKE TOKEN "cigarette" papers also bear a cartoon "hippie" character design that reinforces the products' intended use with marijuana and violates the anti-youth marketing provisions of the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. §387.

By contrast, Republic has taken all steps necessary to ensure that their products comply with all applicable laws and regulations regarding the marketing of smokers' articles.  (Gold Dec. at ¶ 8.)  Republic's affiliate, Top Tobacco L.P., which produces the tobacco marketed and sold by Republic Tobacco, L.P., is a long-time signatory in good standing of the Master Settlement Agreement between the Attorneys General of the numerous settling states and participating manufacturers of tobacco products.  (*Id*.)  As such, all of its products are subject to the marketing restrictions of the Master Tobacco settlement.  (*Id.*)  As its exclusive distributor, Republic Tobacco, L.P., has agreed to abide by the market restrictions of the Master Settlement Agreement.  (*Id*. )  Additionally, as required by the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. §387, Republic has submitted all of its products, including those sold under and in connection with the Point Marks, to and registered their ingredients with the FDA, which enables the FDA to periodically test the products to ensure that they comply with the ingredients disclosures and other provisions of the Act.  (*Id*.)

As a result of these foregoing efforts, any association between Republic and its cigarette papers and Green Planet or its "cigarette" papers will irreparably taint Republic and its cigarette papers with Green Planet's inferior quality and illicit purpose, and substantially undermine the goodwill and standing of Republic and their products in the public and regulatory community.  Green Planet also markets flavored cigarette papers which violate the Family Smoking Prevention and Tobacco Control Act, and FDA pronouncements regarding flavored cigarette

components, which further exacerbates the harm caused by any association between Republic and Green Planet.

### C. The Parties' Pre-Litigation Communications and the California and Illinois Actions

After learning of Green Planet's infringement of Republic's rights, on February 6, 2012, Republic sent Green Planet a letter demanding that it cease any use of the Point Marks. (McShane Dec. at Ex. E.) On February 10, 2012, Green Planet responded, seeking an agreement to sell through its inventory of infringing materials. (*Id*. at Ex. F.) On February 14, 2012, Republic replied, explaining the reasons it cannot allow an infringing Point Mark-branded cigarette paper to remain in the marketplace, and again attempting to facilitate an amicable resolution. (*Id*. at Ex. G.)

Almost immediately thereafter, on February 17, 2012, Green Planet filed the instant action (the "California Action") seeking declarations that it is not infringing Point Marks and the Point Marks are invalid or unenforceable. (Dckt. #1.) Green Planet did not contact or attempt to serve Republic immediately. Rather, on February 23, 2012, Green Planet emailed Republic, continuing settlement discussions, but attaching a courtesy copy of the California Action Complaint. (McShane Dec. at Ex. H.)

On February 27, 2012, Republic filed case No. 1:12-cv-01385 in the Northern District of Illinois (the "Illinois Action") for federal trademark infringement, federal unfair competition, violations of the Illinois Deceptive Trade Practices Act, common law unfair competition, and for cancellation of the Defendant's TOKE TOKEN trademark. (*Id.* at Exhibit A.) Also on February 27, 2012, Republic notified Defendant of the Illinois Action and its intention to serve the summons and Complaint on Defendant. Then, while Green Planet was evading service of the Illinois Action, Green Planet served Republic with the summons in

this Action. (Dckt. #6-7.) On March 2, 2012, Republic successfully served Green Planet with the summons in the Illinois Action. (McShane Dec. at Exhibit B.)

### III. THE COURT SHOULD DISMISS OR STAY THIS ACTION

"Federal courts do not have a duty to grant declaratory judgment." *Leadsinger, Inc.v. BMG Music Publ'g,* 512 F.3d 522, 533 (9th Cir. 2008). To the contrary, "the Declaratory Judgment Act [28 U.S.C. § 2201] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); see also *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("The [Declaratory Judgment Act] gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."). The Court should exercise its discretion here to not entertain this action because this is a purely preemptive action, and the true controversy is Defendant's liability for trademark infringement and the Illinois Action, filed by the true plaintiff, is the appropriate forum for this dispute. *See Gribin v. Hammer Galleries,* 793 F. Supp. 233, 237 (C.D. Cal. 1992) (exercising discretion and dismissing first-filed declaratory judgment action).

#### A. The Court Should Dismiss or Stay this Action in Deference to the Illinois Action

While courts generally recognize the "first to file" rule as a matter of comity, "[c]ircumstances and modern judicial reality," may demand a different approach. *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979). Thus, "the Court may, in its discretion, rely on equitable grounds, such as 'when the filing of the first suit evidences bad faith, ***anticipatory suit, or forum shopping***,' to determine whether to depart from the first to file rule." *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006) (emphasis in original); quoting *Inherent.com v. Martindale-Hubbell,* 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006). Where, as here, a declaratory judgment action has been

triggered by a cease and desist letter, that action is viewed with disfavor as an example of forum shopping and gamesmanship. *Id.* at 1192-1193. In such circumstances, which exist here, equity favors dismissal. *Id.*

This case directly mirrors *K-Swiss Inc. v. Puma AG*, in which the court dismissed a first-filed declaratory judgment action in deference to a second-filed infringement action in another district. No. CV 06-2004-GAF, 2009 WL 2049702, at *3 (C.D. Cal. July 20, 2006). In *K-Swiss*, the declaratory judgment plaintiff received a letter from defendant, putting it on notice of its trademark infringement, and demanding that it (i) cease its infringing action, (ii) disclose certain information regarding its infringement, (iii) promise to destroy remaining infringing products, and (iv) sign an agreement memorializing those terms. *Id.* As here, the declaratory judgment plaintiff responded by refusing to settle the matter on those terms, but proposing other terms in which it would cease its infringement over time. *Id.* Just as here, defendant rejected that proposal and again proposed its initial settlement terms. *Id.* While defendant awaited a response to its second letter, plaintiff filed a declaratory judgment action. *Id.* Exactly as here, two business days later, defendant filed an infringement action in another district. *Id.* at *1. The *K-Swiss* court exercised its discretion to dismiss the declaratory judgment action, holding that there was "very little doubt" that the plaintiff's suit was anticipatory, and equity therefore militated in favor of allowing the second-filed action brought by the "true plaintiff" to proceed. *Id.* at *3. Likewise, in this case, Defendant's filing of this Action was anticipatory and an improper attempt at forum-shopping, and should therefore be dismissed.

Indeed, none of the rationales behind the first-to-file rule apply here. Republic was attempting to negotiate an amicable resolution of this matter; it should not be penalized for those efforts by being forced to litigate this declaratory judgment action 2,000 miles from its place of business. *See Xoxide*, 448 F. Supp. 2d at 1194 (dismissing declaratory judgment action filed while trademark owner

Mitchell
Silberberg &
Knupp LLP

4521613.1

7

was attempting to resolve the dispute amicably in deference to later-filed infringement action); *Inherent.com,* 420 F. Supp. 2d at 1100 ("To impose the 'first-to-file' doctrine in this instance…would unreasonably penalize [the natural plaintiff] which attempted to resolve the dispute before filing suit."). Moreover, the "[a]pplication of the first to file rule here, where the parties filed nearly simultaneous actions in competing jurisdictions, would invoke none of the merits of the rule and would promote a race to the courthouse." *K-Swiss,* 2009 WL 2049702, at *2; *Gribin*, 793 F. Supp. at 234 (holding that application of Declaratory Judgment Act should not be used to provoke a race to the courthouse and dismissing first-filed declaratory judgment action). In addition, Green Planet had no intention of serving the summons in this case unless Republic asserted their legitimate rights. Green Planet did not attempt to serve Republic until it became clear that Republic would assert its rights and identify violations of the Controlled Substances and Family Smoking Prevention Acts, and only after Green Planet received a copy of the Illinois lawsuit.

### B. In the Alternative, this Action Should be Transferred to the Northern District of Illinois

In the event that the Court declines to dismiss or stay the action, the Court alternatively should transfer the action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), which permits transfer to any other district or division where the suit might have been brought "[f]or the convenience of parties and witnesses" or "in the interest of justice." This action "might have been brought" in the Northern District of Illinois, since Defendant is doing business in the Northern District of Illinois and is subject to personal jurisdiction there. *See Columbia Pictures Television v. Krypton Broad. of Birmingham*, 106 F.3d 284, 289 (9th Cir. 1997).

When evaluating a § 1404(a) motion, the court should make a "flexible and individualized analysis" and "weigh in the balance a number of case-specific

factors" to determine whether the proposed transferee court would be a more convenient forum for litigation. *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  These factors include "private interest factors" affecting the convenience of the litigants and "public interest factors" affecting the convenience of the forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

Where the action is predicated solely on declaratory relief claims, the burden is on the plaintiff – not the defendant – to prove that the convenience factors favor retention of the action in its chosen forum. *See BASF Corp. v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995)("[T]he **natural plaintiff's** choice of forum and law will be disturbed only in exceptional circumstances.") (emphasis added).  Additionally, where the declaratory judgment action is filed in anticipation of an imminent coercive action, the so-called "first-to-file" rule does not apply and no deference is given to the date of first filing. *Ex-Im Plastics, Inc. v. Miwon Am., Inc.*, No. CV 96-5710 JGD RCX, 1996 WL 928189, at *5 (C.D. Cal. Oct. 28, 1996) (holding that Plaintiff in the first-filed action "raced to the courthouse to avoid litigating in another forum" and declining to apply first-to-file rule).

Defendant cannot show that the § 1404(a) factors favor litigation in this District.  Rather, the interests of justice counsel in favor of transfer to the Northern District of Illinois.  First and foremost, the injury at issue here plainly occurred in the Northern District of Illinois, where Republic is located. *Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 587 (E.D. Pa. 2005) (trademark holder's infringement damages "occurred and continues to occur [where the holder is located]").  By contrast, no purported "injury" took place in California.

Moreover, a declaratory judgment plaintiff's choice of forum is accorded little weight, especially where, as here, the plaintiffs were engaged in forum shopping. *Reaves v. Cable One, Inc.*, No. 11–00469, 2011 WL 5331695, at *2. (D. Ariz. Nov. 7, 2011) ("a plaintiff's choice of forum should be given less deference where there is evidence of forum shopping").  By contrast, the Court should give

1  substantial deference to Republic's choice of forum (Illinois), as Republic is the
2  natural plaintiff in this action and resides in Illinois.  *Burger King Corp. v.*
3  *Rudzewicz*, 471 U.S. 462, 473 (1985) (states have a "manifest interest" in
4  providing residents with a forum for redressing injuries inflicted by out-of-state
5  actors).
6        Finally, this action should be transferred as a matter of public policy.  This
7  action was a purely preemptive action that was hurriedly filed within two weeks of
8  when Republic first contacted Defendant.  The public policy disfavoring forum-
9  shopping strongly militates in favor of transfer.  *See BASF*, 50 F.3d at 558; *Mission*
10 *Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983).  There is
11 no unique local interest in this litigation, and Republic's choice of forum, as
12 natural plaintiff, should therefore be given deference.

13 **IV.   CONCLUSION**

14       For the foregoing reasons, Defendants respectfully request that this action be
15 dismissed or stayed, or, in the alternative, transferred to the Northern District of
16 Illinois.

18 DATED:  March 20, 2012

KARIN G. PAGNANELLI
MITCHELL SILBERBERG & KNUPP LLP

ANTONY J. McSHANE
KATHERINE DENNIS NYE
NEAL, GERBER & EISENBERG LLP


By:  /s/ Karin G. Pagnanelli
     Karin G. Pagnanelli
     Attorneys for Defendants
     DRL ENTERPRISES, INC. and
     REPUBLIC TOBACCO. L.P.